```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
                              Plaintiff,                   :
                                                           :           20-CR-59-2 (VSB)
                   - against -                             :
                                                           :           **OPINION & ORDER**
                                                           :
KAILA MINAYA MARCANO-PEÑA,                                 :
                                                           :
                              Defendant.                   :
                                                           :
-----------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

Before me is Defendant's motion for compassionate release under 18 U.S.C. § 3582. Because Marcano-Peña fails to demonstrate she exhausted her administrative remedies and fails to demonstrate an extraordinary and compelling reason warranting early release, Defendant's motion is DENIED.

**I.      Background**[1]

Wilson and Daisy Confesor "were involved in a drug trafficking and money laundering" operation (the "Organization") based in the Dominican Republic. (Doc. 184 ("PSR") ¶ 11.) The Organization "transported cocaine to the continental United States for sale/distribution, then laundered the proceeds of the narcotics activity back to the Dominican Republic." (*Id.* ¶ 12.)

Defendant Kaila Minaya Marcano-Peña ("Marcano-Peña" or "Defendant") became involved in the Organization as a recipient of cash proceeds from the narcotics sales in the United States. (*Id.* ¶ 15.) Specifically, Defendant received and transported cash from the

---

[1] The factual background herein is drawn from Defendant's Revised Final Presentence Investigation Report ("PSR"). (Doc. 184.) Citations to the PSR refer to paragraph numbers where available, and otherwise refer to the PDF pagination.

Organization's drug sales on multiple occasions—including a single delivery of $140,000—"and bank records show the movement of funds." (*Id*. ¶¶ 15–16, 18–19, 22.)

On January 22, 2020, a sealed indictment was filed charging Defendant and three co-conspirators with one count narcotics conspiracy and one count money laundering. (*See* Doc. 5.) Defendant was arrested on February 5, 2020, and released on bail on February 26, 2020. (PSR at 5.) On August 24, 2021, Defendant pled guilty to a Superseding Information charging her with one count of committing transactions in criminally derived property of a value greater than $10,000 in violation of 18 U.S.C. § 1957. (*See* Doc. 116 (Superseding Information); Doc. 117 ("Plea Tr.").)

On October 6, 2022, although the prosecutor and defense counsel appeared before me for Marcano-Peña's sentencing, Marcano-Peña failed to appear despite being aware of the date and time of her sentencing. (*See* Minute Entry dated Oct. 6, 2022.) On October 18, 2022, I issued a bench warrant for Defendant's arrest. Eventually, Defendant was located in the Dominican Republic, arrested and deported to this District on June 7, 2023. (*See* Doc. 159 ("Hr'g Tr.") at 3:20-23.)

On September 25, 2023, I sentenced Defendant to a term of 42 months' imprisonment followed by three years of supervised release. (Doc. 173 ("Sent'g Tr.") at 68:2-3; *id*. at 68:9-10.) Defendant's term of imprisonment began on or about May 15, 2023. (*See* PSR at 4.)

Defendant filed the instant motion for compassionate release on November 19, 2024, (*see* Doc. 195 ("Mot.")), and filed a supplemental letter on November 26, 2024, (Doc. 196 ("1st Ltr.")). Defendant has filed additional letters dated January 21, 2025, (Doc. 197 ("2d Ltr.")), and April 23, 2025, (Doc. 205 ("3d Ltr.")). On April 23, 2025, the Government advised that Defendant currently resides in a residential reentry center in Washington, DC, is eligible for

release to home confinement on July 6, 2025, and that her projected release date from Bureau of Prisons ("BOP") custody is November 9, 2025. (Doc. 206 ("Gov't Ltr.").)

**II.     Legal Standard**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i) of Title 18 of the United States Code, the compassionate release statute, provides one such exception. "To obtain compassionate release, a defendant must first have 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf' or allowed 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility' before bringing his motion." *United States v. Van Putten*, 726 F. Supp. 3d 245, 251 (S.D.N.Y. 2024) (quoting 18 U.S.C. § 3582(c)(1)(A)). A court may then "reduce" a term of imprisonment "if it finds that (1) the defendant's circumstances present extraordinary and compelling reasons to warrant a reduction, (2) the factors proscribed in 18 U.S.C. § 3553(a) do not outweigh such extraordinary and compelling reasons, and (3) a reduction would be consistent with the relevant policy statements of the Sentencing Commission, *i.e.*, the policy statement in U.S. Sentencing Guidelines Manual § 1B1.13." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

U.S. Sentencing Guidelines Manual "§ 1B1.13(b) enumerates six circumstances that, when considered either individually or in combination, a court may find amount to extraordinary and compelling reasons." *United States v. Garcia*, 758 F. Supp. 3d. 47, 51 (E.D.N.Y. 2024). Specifically, the policy statement provides that any of the following may be relevant to a finding of extraordinary and compelling circumstances: (1) the "medical circumstances of the defendant"; (2) the defendant is "at least 65 years old," is "deteriorat[ing]" with age, and has served the lesser of 10 years or 75% of his sentence; (3) the "family circumstances of the

3

defendant"; (4) whether the defendant was physically or sexually abused while in custody; (5) whether "any other circumstance or combination of circumstances" exist that "are similar in gravity" to the preceding four circumstances; and/or (6) the "defendant received an unusually long sentence and has served at least 10 years" and a subsequent change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(1)–(6). "[Section] 1B1.13 also provides that a court should reduce a defendant's sentence only after determining that 'the defendant is not a danger to the safety of any other person or to the community.'" *Garcia*, 758 F. Supp. 3d at 52.

The factors set forth in 18 U.S.C. § 3553(a) to be considered when considering a motion for compassionate release include, among other things, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "the kinds of sentences available;" and "the need to avoid unwarranted sentence disparities" among similar defendants. It is the defendant's burden to show "extraordinary and compelling circumstances and that a reduction is warranted under [the] § 3553(a) sentencing factors." *Garcia*, 758 F. Supp. 3d at 52 (citing *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021)). "[A] district court's discretion in this area—as in all sentencing matters—is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (citing *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc)).

### III. Discussion

Defendant's motion fails to meet the requirements for compassionate release for two independent reasons. First, Defendant does not establish that she exhausted her administrative remedies for compassionate release with the BOP. (*See generally* Mot.) Nor has she shown that an "equitable exception[]" to the exhaustion requirement, "such as waiver, estoppel, [or] futility,"

4

applies to her motion. *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 566 (S.D.N.Y. 2020) (citations omitted). The failure to exhaust administrative remedies is sufficient grounds to deny the motion. *See, e.g.*, *United States v. Pereyra-Polanco*, No. 19-CR-10, 2020 WL 1862639, at *1 (S.D.N.Y. Apr. 14, 2020) (denying motion for compassionate release for failure to exhaust administrative remedies).

Second, even if I were to consider the merits of Defendant's motion, I find that Defendant fails to demonstrate an extraordinary and compelling reason warranting early release. Defendant asserts that she has an "extreme need to go home due to her mother's severe illness and her mother's health condition and state of mind." (Mot. 1–2 (punctuation altered).) Specifically, because her mother is hospitalized recovering from "emergency surgery and cannot take care of herself," and Defendant's "siblings can not simply do it alone." (*Id*.) As support for her motion, Defendant has also submitted her mother's medical records documenting her mother's continued hospitalization in January 2025, (2d Ltr. 6–50), and a letter from her sister stating that she cannot take care of their mother "by herself" nor can she "fully" commit to caring for her mother, (*id*. at 2).

The Sentencing Commission's Policy Statement provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may be an extraordinary and compelling circumstance warranting early release. U.S.S.G. § 1B1.13(b)(3)(C). *See, e.g.*, *United States v. Stokes*, No. 19-CR-307, 2024 WL 216643, at *2–3 (D. Conn. Jan. 19, 2024) (granting compassionate release based in part on this factor). Although I am sympathetic with Defendant's family situation, I do not find that she has established either that (1) her mother is incapacitated or (2) that Defendant is the only available caregiver for her.

5

  The medical records submitted indicate that Defendant's mother underwent hernia surgery on November 6, 2024, and was discharged from the hospital on November 15, 2024. (*See* 2d Ltr. 6–10.) Defendant has submitted emails from her sister indicating that Defendant's mother was hospitalized for sepsis on December 20, 2024, underwent further procedures over the following weeks, and remained in the hospital through at least January 12, 2025. (*Id*. 3–5.) It is unclear whether Defendant's mother remains hospitalized—if she is, Defendant has not provided "evidence from several sources" indicating that her mother "will actually be discharged . . . without any available caregiver." *United States v. Sprull*, No. 18-CR-665, 2024 WL 4528126, at *3 (S.D.N.Y. Oct. 18, 2024) (internal quotation marks omitted). If Defendant's mother has been released, even if she is "in great pain" and would appreciate Defendant's care, without "medical records or a medical note from a treating physician to establish her incapacitation," the present record does not establish that Defendant's mother is incapacitated, as opposed to in a diminished state. *United States v. Diaz*, --- F. Supp. 3d ---, No. 10-CR-277, 2024 WL 3228347, at *6 (E.D.N.Y. June 27, 2024) (internal quotation marks omitted).

  Additionally, the letter from Defendant's sister does not establish that Defendant is their mother's sole caregiver; rather, it indicates that Defendant's sister has found it very difficult to care for their mother, in Defendant's absence. Specifically, Defendant's sister states that she "cannot take care of [their mother] by myself," "can't commit to her [mother] fully," and is "very overwhelmed in this situation." (2d Ltr. 2.) Courts have found similar allegations not to establish extraordinary and compelling circumstances warranting early release. *See, e.g.*, *United States v. Johnson*, No. 10-CR-431, 2024 WL 3356987, at *3 (S.D.N.Y. July 10, 2024) (finding that statement from mother's doctor that defendant's sister's "illness has made it challenging for her to take care of her mother" demonstrated only that "it would be an immense help to his

6

mother" if defendant were released, not "that he is the only available caregiver for his mother"). Moreover, although Defendant's sister's situation is extraordinarily challenging, given her ability to take on the admittedly difficult task of caring for her mother, Defendant is not her mother's sole caregiver. *See, e.g.*, *id.*; *United States v. Burden*, No. 00-CR-263, 2024 WL 94402, at *3 (D. Conn. Jan. 8, 2024) ("Currently, [defendant's] sister, with the help of her nephew, provides significant assistance to their parents . . . It is clearly a challenge for them to do so, and understandably so . . . [But] it is clear [defendant] is not the 'sole caregiver' available."). Further, neither Defendant nor her sister has demonstrated that "there are no other persons in the community available to care for [their] mother—perhaps from extended family members, friends, or community groups." *Johnson*, 2024 WL 3356987, at *3; *see also Burden*, 2024 WL 94402, at *3 (same). Indeed, Defendant "has four full siblings" three of whom live in Maryland where Defendant's sister is caring for their mother. (*See* PSR ¶ 50.) In short, although Defendant and her sister are in a difficult situation, this is "a challenge faced by the children of many elderly parents," not an extraordinary and compelling circumstance warranting early release. *Burden*, 2024 WL 94402, at *3.

I note as well that Defendant is presently in a residential reentry center in which she enjoys some travel privileges, (*see* Doc. 205 at 3 (permission slip to visit Planet Fitness)), and is due to be released on home confinement—the relief she seeks—on July 6, 2025, (*see* Gov't Ltr.). Therefore, it appears possible that, consistent with BOP policies and regulations, Defendant may use her present privileges and the privilege of home confinement to care for her mother prior to her ultimate release from BOP custody on November 9, 2025.

Furthermore, even if Marcano-Peña had demonstrated extraordinary and compelling circumstances, the factors under 18 U.S.C. § 3553(a) counsel against reducing her sentence.

7

Marcano-Peña's guideline range was 108 to 120 months' imprisonment, so her sentence of 44 months' imprisonment represented a substantial variance. In addition, although she absconded rather than face sentencing, she was not charged with the separate crime of bail jumping. Therefore, "releasing [her early] would undermine several of the 3553(a) factors," including "the nature and seriousness of the offense." *United States v. Francis*, 17-CR-753-1, 2020 WL 7247180, at *2 (S.D.N.Y. Dec. 9, 2020). I also find it would undermine "the need for the sentence imposed . . . to reflect the seriousness of the offense" and "the need to avoid unwarranted sentence disparities." § 3553(a)(2), (6).

### IV.     Conclusion

For the foregoing reasons, Defendant's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 195.

SO ORDERED.

Dated:  May 23, 2025
        New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge